FALEAFINE MUSU, Plaintiff

v.

MALIA L. SUAPILIMAI, TERRITORIAL REGISTRAR,
and DOES I-X, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 2-86

March 22, 1988

Before REES, Chief Justice, AFUOLA, Associate Judge, TUIAFONO, Associate Judge.

Counsel: For Plaintiff, Charles Ala'ilima
For Defendant Suapilimai, Aviata Fa'alevao

This is a boundary dispute. The Court heard hours of testimony, quite fascinating in its own

way, on such questions as whether various people were or were not blood members of the Faleafine family and whether there was ever really a Faleafine Lui. Our task, however, is limited to determining the boundary between the Faleafine communal land called Lupelele and the adjoining land which defendant Leituala Malia Suapilimai registered in 1981 under the name Niua.

The facts are as follows:

1) The area in dispute is accurately displayed in plaintiffs' survey. Its area is slightly less than a fifth of an acre, and it is in the shape of a triangle with a narrow panhandle at the southeastern corner.

2) The Faleafine family has long occupied the land immediately to the west of the disputed area.

3) Members of the immediate family of defendant Malia Suapilimai (who since the commencement of this litigation has registered the matai title Leituala) have occupied the land immediately to the east of the disputed area for at least forty years.

3) It is unclear under what title defendant's family members lived on the adjoining land. According to the testimony of the defendant at trial, this has always been Leituala family land. Plaintiff's witnesses testified that the Leituala family has no communal land in this part of Ili'ili and that Malia's parents came to live there by permission of the true owner, Letuligasenoa. The latter version is supported by most of the circumstantial evidence: Both sides agree that Malia's mother was a member of the Letuligasenoa family. The land occupied by Malia and her family is adjoined on at least two sides by land belonging to the Letuligasenoa family or members thereof. On at least one occasion (discussed below) Malia's family seems to have recognized the authority of Letuligasenoa over the land.

4) The disputed portion has been occupied or used at various times by both sides in this litigation. For at least twenty years prior to 1973 there was a small Samoan-style fale on the disputed portion occupied by various relatives of the present defendant. Her family still has an umu in the disputed area which has been there for many

110

years. The tract has also been occupied and cultivated, however, by members of the Faleafine family who have long had a dwelling house within a few feet of it. Both sides testified that for many years the members of the two families were quite friendly and that neither family cared whether a few square feet of its land was being used by the other. Maintenance chores were performed sometimes by one family and sometimes by the other.

5) On at least one occasion, however, there was a dispute between the two families about their boundary. In 1973 the occupants of the two households met with Chief Letuligasenoa, who walked the boundary line with them. Among those present were the husband, now deceased, of Felili Faleafine who now occupies the house just to the west of the disputed portion; the present defendant; and her husband, now also deceased.

6) Plaintiff's witnesses, including the daughter of the late Letuligasenoa, testified that the line he marked was along a line of coconut trees stretching from the road to a fence at the back of the property. The judges visited the site and saw that these trees do exist and do appear to have been planted deliberately in a straight line many years ago. The trees appear to be along the eastern boundary of the Faleafine survey.

7) Shortly after the boundary was marked, defendant's family removed the Samoan dwelling house, which had been on the Faleafine side of the line. They continued, however, to use the umu which was also on the Faleafine side of the line.

8) In 1981, when the occupants of the Faleafine dwelling (Felili and her late husband) were temporarily in Hawaii, Malia ordered a survey. The survey was done in the name of "Malia L. Suapilimai" rather than in the name of any family. It included the land to the east, of which she and her immediate family are the undisputed occupants, as well as the portion under dispute in this case. Malia subsequently offered the surveyed land for registration in the name of the "Suapilimai family." She testified at trial, however, that this was an error and that she meant to have it registered in the name of the "Leituala family." (Her testimony was that Suapilimai is a lesser title of the Leituala family. One of plaintiff's witnesses testified that both Suapilimai and

111

Leituala are lesser titles of the Lealaimatafao family.) Nobody objected to the registration within the statutory time period, and it was accordingly inscribed in the records of the Territorial Registrar.

9) When the occupants of the Faleafine dwelling returned from Hawaii they found that Malia and her family had begun to use the disputed portion from which they had temporarily withdrawn after 1973. The two sides then resumed the dispute which has culminated in this case.

From these facts we draw the following conclusions of law:

1) We need not reach the question whether the occupation of the land by Malia and her relatives was under the authority of the Letuligasenoa, Leituala, or Suapilimai family or of some other family. Neither the Letuligasenoa family nor any other neighboring landowner is a party to this case. (For this reason, we cannot possibly "quiet title" to the land as requested by plaintiff. We can only decide which of the parties in this case has proved a better right than the other to occupy the disputed land.)

2) The best evidence is that the historic boundary between the land occupied by the Faleafine family and that occupied by the neighboring landowner to the east was the line of coconut trees along the eastern boundary of the Faleafine survey. The very existence of a straight line of tall trees between two tracts of land is strong circumstantial evidence; that Letuligasenoa identified this as the boundary and that Malia's family then withdrew (and even dismantled a dwelling in the disputed portion) is even stronger evidence that both sides once recognized this line as the boundary. This is true whether the deference of Malia and her relatives to Letuligasenoa was based on a belief that their own claim to occupy the land was based on their status as Letuligasenoa family members; on respect for Letuligasenoa as a wise and just man who had long been familiar with the land in the vicinity; or on an independent belief that the coconut trees did in fact mark the boundary.

3) The best conclusion we can draw from the continued use of the umu by Malia and her family even after the boundary was marked and the dwelling

112

house demolished, and from the lack of any objection from the Faleafines until quite recently, is that this use was grounded in an historic license.

4) The registration of the disputed portion by Malia Suapilimai as part of "Niua" in 1981 did not change anything. The registration was not done in accordance with the statutory law of American Samoa, as appears clearly on the face of the registration documents themselves.

Malia Suapilimai had no authority in 1981 to register land on behalf of the Suapilimai family, the Leituala family, or any other family, since an offer of registration for communal land must be accompanied by a survey requested by the senior matai of the family. A.S.C.A. § 37.0102. The statutory language is absolute and admits of no exceptions; a family whose senior matai title is vacant must select a senior matai before it can offer land for registration. This is undoubtedly among the reasons Malia ordered the survey in her own name. See A.S.C.A. § 37.0102(d).

On the other hand, the land could not legally have been registered as Malia's individually owned land since its alienation to an individual was never approved by the Governor and the Land Commission as required by A.S.C.A. § 37.0201 et seq. (This land is in the center of the village of Ili'ili, just off the malae. It undisputed, and would in any case be beyond dispute, that the land has long been the property of some communal family or families of Ili'ili rather than having been recently cleared from virgin bush by some individual acting on his own account. It could not, therefore, have become individually owned property except in accordance with the statutory procedures for alienation of communal land.) This, we believe, is why Malia switched characterizations in mid-stream, calling the land that of "Malia L. Suapilimai" when she ordered the survey and of the "Suapilimai family" when she registered it.
That Malia subsequently attempted to sell and lease portions of "Niua" (including the whole portion now in dispute) as her individually owned land suggests that she does not really regard it as belonging to the "Suapilimai family" or, as she now contends, the "Leituala family." In any case the registration violated the statutes and was null and void.

113

5) We stress that we do not rest our holding on plaintiff's contention that a registration has no legal effect if it was done at a time when someone who might have objected to it was off the island. Nor would it seem to make any difference that the senior matai of the Faleafine family does not live in Ili'ili and therefore does not always know about village council meetings. If the land had been offered for registration in accordance with law, if there was no conflicting prior registration, if public notice was given prior to the survey at a meeting of village chiefs and subsequent notice posted at the courthouse and two public places in Ili'ili, and if the Faleafines never found out about it and did not object for sixty days, the registration statute would seem to deny them any further right to object. A.S.C.A. § 37.0101 et seq. The even broader contention made by plaintiff --- that a registration is inoperative and can be subsequently invalidated whenever the land registered can be shown to have been the property of some person other than the registrant-- would seem to deprive the statute of any force or effect whatever.

Accordingly, Leituala Malia Suapilimai and her family are permanently enjoined from interfering with the rights of the Faleafine family to use and occupy any of the land on the Faleafine survey. They are enjoined from using the land themselves except that they may use the umu so long as they do so in a way that does not disturb the Faleafines in their peaceful enjoyment of the remainder of the land.

Declaratory judgment shall also issue that the registration of land Niua by Malia L. Suapilimai and/or the Suapilimai family is of no legal force or effect.

It is so ordered.